{¶ 7} I respectfully dissent.
 {¶ 8} Gloria J. Bercaw was injured on June 8, 1992. Her claim was initially recognized for "sacroiliac strain." Subsequently, the conditions of "herniated disc L2-3 and L5-S1" were added.
 {¶ 9} After the new conditions were recognized, Ms. Bercaw filed a motion seeking a period of temporary total disability ("TTD") compensation. The motion was primarily supported by reports and records from her treating chiropractor, Brian R. Nobbs, M.D. However, other medical records were provided on Ms. Bercaw's behalf.
 {¶ 10} The medical information originally filed was provided to Ayodele Adebayo, M.D., for a physician review. Dr. Adebayo concluded that the medical documentation was insufficient to establish a period of disability.
 {¶ 11} Dr. Adebayo's report was provided to Dr. Nobbs, who wrote a report in response, finding fault in Dr. Adebayo's opinion. Dr. Nobbs' responsive report was dated May 4, 2006.
 {¶ 12} On May 16, 2006, a district hearing officer ("DHO") relied upon Dr. Adebayo's report to deny Ms. Bercaw's motion for TTD compensation. The DHO indicated that all evidence on file was reviewed and considered, but the order does not clearly indicate that the report of Dr. Nobbs, dated 12 days before the hearing, had made it to the file.
 {¶ 13} Counsel for Ms. Bercaw appealed and, on July 6, 2006, a staff hearing officer ("SHO") heard the appeal. The SHO relied upon Dr. Adebayo's report and also "upon the lack of contemporaneous medical evidence to indicate that the injured worker *Page 5 
was taken off work on 03/3/2004 as a result of the 06/08/1992 industrial injury." Further appeal to the commission was refused.
 {¶ 14} The issues before the court involve the questions of whether Dr. Adebayo's report constitutes some evidence sufficient to deny TTD compensation and whether there really was a lack of medical evidence to support that Gloria Bercaw was TTD as of March 13, 2004.
 {¶ 15} The latter issue is more easily resolved because the SHO misstated the legal standard to be applied. Since an injured worker can only seek TTD compensation for a period of two years prior to the filing of a motion, the issue is whether the injured worker was temporarily totally disabled as of two years before the filing of the motion, not did the injured worker become disabled on that exact date.
 {¶ 16} Further, abundant medical evidence was provided by Dr. Nobbs and other treating physicians which would justify payment of TTD compensation to Ms. Bercaw if Dr. Adebayo's report did not constitute some evidence supporting denial of the compensation.
 {¶ 17} The court then should turn to the sufficiency of the report of Dr. Adebayo to constitute some evidence to support the commission's denial of TTD compensation.
 {¶ 18} Dr. Adebayo's report begins with a paragraph which states what he is supposed to have done as a physician who has not examined or treated an injured worker whose medical condition he is evaluating. The paragraph states that Dr. Adebayo has accepted the allowed conditions and has accepted the findings of all the examining physicians. *Page 6 
 {¶ 19} The report does in fact support the conclusion that Dr. Adebayo reviewed a significant number of reports and a significant quantity of medical records. However, he seems to pick and choose among the records before him. He mentions Gloria Bercaw's personal assessment that her pain level was down to a two on a scale of ten in early March 2004, but makes no mention of Gloria's examinations on March 13, 2004 and April 8, 2004 in which she was found to have severe aggravation of lower back pain due to a nine-month lapse in her chiropractic care. Her chiropractic treatment and evaluation for 22 months thereafter show fluctuation in her pain levels, partly related to fluctuations in the weather. Other than the one subjective, two on a scale of ten for pain, the other self-evaluations are generally six on a scale of ten, with one eight on a scale of ten.
 {¶ 20} Also, in this context, Dr. Adebayo shows no awareness of what Ms. Bercaw's job entailed. Could she do her job as an employee of Sunnybreeze Health Care Corp. with a pain level of eight? Of six? Of two? Can a woman of age 50 plus with two herniated discs and spasms in her legs perform her job in health care?
 {¶ 21} With no apparent awareness of what Ms. Bercaw's job entailed as far as physical demands and a consistent level of significant pain coupled with two herniated discs, Dr. Adebayo as a non-examining physician was not in a position to say Ms. Bercaw was not TTD. The comment in his report that "she was doing well except for occasional flaring as a result of cold weather" is simply a misstatement of the consistent physical findings of both Dr. Nobbs and Mohammad Khan, M.D. who were both examining and treating physicians. At times Ms. Bercaw's physical condition improved, but doing better is not the same as doing well enough to perform duties in a nursing home. *Page 7 
 {¶ 22} I would not find that Dr. Adebayo's report constitutes some evidence to support a denial of TTD compensation. As a result, I would sustain the objections to the magistrate's decision. I would then return the case to the commission to evaluate Ms. Bercaw's entitlement to TTD compensation without the use of Dr. Adebayo's report and applying the appropriate legal criteria. Since the court does not reach this result, I respectfully dissent. *Page 8 
 APPENDIX A MAGISTRATE'S DECISION Rendered on January 29, 2007 IN MANDAMUS {¶ 23} Relator, Gloria J. Bercaw, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total *Page 9 
disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 24} 1. Relator sustained a work-related injury on June 8, 1992, and her claim was originally allowed for "sacroiliac strain."
 {¶ 25} 2. On June 14, 2004, relator had an MRI of her lumber spine which showed mild desiccation at level T11-12 and T12-L1; disc desiccation with mild posterior disc protrusion with no significant canal stenosis at L2-3; mild disc desiccation but no herniation or stenosis at L3-4 and L4-5; and disc desiccation with small disc herniation at L5-S1.
 {¶ 26} 3. On August 20, 2004, relator filed a motion requesting that her claim be additionally allowed for herniated lumbar disc as indicated in the MRI.
 {¶ 27} 4. Relator's motion was heard before a district hearing officer ("DHO") on October 29, 2004, and resulted in an order granting the request and amending relator's claim to include the following additional conditions: "herniated disc L2-3 and L5-S1."
 {¶ 28} 5. On April 8, 2004, relator returned to the Chiropractic Wellness Center with Brian R. Nobbs, M.D. In his office notes, Dr. Nobbs indicated that relator had increased lower back pain and noted that this severe aggravation was due to nine months without care. He also noted that relator had increased fixation and decreased endurance and strength in her right lower extremity.
 {¶ 29} 6. Dr. Nobbs completed a C-84 in March 2006 certifying relator was temporarily and totally disabled from April 8, 2004 through an estimated return-to-work date of June 1, 2006. *Page 10 
 {¶ 30} 7. On March 13, 2006, relator filed a motion requesting the payment of TTD compensation beginning March 13, 2004. Relator attached thereto the October 29, 2004 DHO order which had additionally allowed her claim for herniated disc L2-3 and L5-S1, as well as Dr. Nobbs' C-84 and his office notes and records.
 {¶ 31} 8. The office notes include ten office visits from April 8, 2004 through February 16, 2006. In the office notes for the visits September 29, 2004, October 27, 2004, February 28, 2005, and November 14, 2005, Dr. Nobbs indicated that relator's lower back pain had decreased in both frequency and intensity, that she had decreased fixation and increased endurance and strength. Dr. Nobbs noted that relator needed episodic, palliative, supportive care and indicated that she was "chronic improved." On May 2, 2005, Dr. Nobbs noted that relator's lower back pain had increased in both frequency and intensity and that it had been aggravated due to her activities of daily living. He noted that she had decreased strength bilaterally, increased fixation and decreased endurance. Relator's visits on July 5 and September 29, 2005, showed a decrease in lower back pain, an improvement in strength and fixation, and Dr. Nobbs noted that relator's improvement was due to treatment and noted that she should maintain the current treatment frequency for three months and then decrease to two to four times per month to maintain her current clinical status based on the previous failed care separation. On January 10, 2006, Dr. Nobbs noted a slight decline in relator's condition and noted that her treatment provides her with two to four days of palative relief and helps to maintain her current clinical status and gives her the highest level possible of function. The last office note is from February 16, 2006, and shows an increase in lower back pain, moderate lumbar tenderness with mild spasms and segmental fixation. *Page 11 
 {¶ 32} 9. A physician review was conducted by Ayodele Adebayo, M.D., on April 1, 2006. Dr. Adebayo indicated that he had reviewed and accepted the allowed conditions and the findings of the examining physicians and that he had made his conclusions based upon his review of the online medical records provided him by the Ohio Bureau of Workers' Compensation. Dr. Adebayo was asked to respond to whether the requested period of disability beginning March 13, 2004 to the present and continuing was related to relator's June 1992 industrial injury. Dr. Adebayo noted that relator saw Dr. Simons on March 9, 2004, and that she had reported that her pain was a two on a scale of one to ten, and that her pain had been under control. On exam, Dr. Simons noted tenderness of the facet joints of the C-, T-and lumbosacral spine, antalgic gait and right lower limb and ankle edema. Thereafter, Dr. Adebayo summarized Dr. Nobbs' office notes beginning April 8, 2004, and noted that beginning in September 2004, relator's lower back pain had reduced in frequency and intensity, that she had decreased fixation as well as increased endurance, strength and ADL. Thereafter, Dr. Adebayo noted that in December 2004, relator indicated her pain was an eight out of ten, due to the cold weather. During an acupuncture visit on March 1, 2005, relator's pain was a six out of ten and relator indicated that she had continued relief from the acupuncture. Thereafter, in August 2005, relator's pain was a four out of ten and, in November 2005, Dr. Reddy noted that relator was doing well and that her pain was well controlled while on this regimen. In February 2006, Dr. Beresh noted that relator was taking more valium. Thereafter, Dr. Adebayo concluded as follows:
 My opinion to a reasonable degree of medical probability is that there is not sufficient medical documentation to support that the IW was TTD. Her encounter notes showed that she was doing well except for occasional flaring as a result of cold *Page 12 
weather. I do not think that the requested POD is substantiated. It should therefore be denied.
(Dr. Adebayo's report can be found at pages 21-22 of the record.)
 {¶ 33} 10. On May 4, 2006, Dr. Nobbs responded to Dr. Adebayo's file review. Dr. Nobbs stressed that Dr. Adebayo had not examined or treated relator and stated:
 It is not practical for Dr. Adebayo's opinion to be relied upon as the reason for Ms. Bercaw's period of temporary total disability to be denied. There is not a doctor in the world who can accurately determined a patient's ability or inability to work without examining the patient.
In the remainder of his report, Dr. Nobbs went on to explain what the medical reports reviewed by Dr. Adebayo actually mean as compared to what Dr. Adebayo thought them to mean. He noted, in pertinent part:
 Ms. Bercaw states that her pain was doing relatively well while seeing Dr. Simons until her aggravation for which she presented to me on 4-8-04. She was seen by Dr. Kahn on 3-13-04 for this aggravation. Relatively well for Ms. Bercaw means that she is able to perform most activities of daily living with somewhat tolerable pain.
 My assessment of Ms. Bercaw on 9-29-04 of chronic improved WRI is consistent with Ms. Bercaw's period of temporary total disability. It indicates that she was showing improvement from the previous visit but that she was not at MMI. The same is true for the assessments of 10-27-04 and 12-31-04. These assessments show she was continuing to improve from treatment.
 The assessment of 12-16-04 notes a severe aggravation of Ms. Bercaw's condition due to the weather[.] * * * She was reporting improvement from the acupuncture. * * *
 Dr. Beresh noted on 2-6-06 that she was taking increased number of valium[.] * * * This indicates increased symptoms and increased stress due to the symptoms. This is certainly not indicative of a patient who has reached MMI.
 * * *
 *Page 13 
* * * Ms. Bercaw experienced a significant aggravation of her condition for which she presented to Dr. Kahn on 3-13-04 and myself on 4-8-04. * * *
 * * *
 It is my professional opinion that Ms. Bercaw was temporarily and totally disabled as of 3-13-04 (the first date she was seen by Dr. Kahn) due to the fact that she was allowed for a lumbar herniated disc L2-3 and L5-S1 on 11-22-04.
 * * *
 * * * [A]ll of the chiropractic treatment was found to be medically necessary due to the allowance of the disc herniations. * * * Ms. Bercaw's requested period of temporary total disability is medically necessary and causally related to her recently allowed disc herniations.
 * * *
 * * * Ms. Bercaw's exam findings provide objective proof that Ms. Bercaw has not reached MMI strictly for the allowed conditions of lumbar disc herniation and has shown improvement from treatment. * * *
 Ms. Bercaw's treatment improves her R.O.M. It decreases her myospasm and tenderness. It improves muscle strength of her lower extremity muscles. Most importantly, it keeps her functioning.
 Temporary total disability is considered medically necessary when it improves a patient's condition and keep it from getting worse. * * *
 Ms. Bercaw has had constant pain since her work injury. * * *
 {¶ 34} 11. Relator's application was heard before a DHO on May 16, 2006, and was denied for the following reasons:
 It is the finding of the District Hearing Officer that the injured worker is requesting the payment of temporary total disability *Page 14 
compensation from 03/13/2004 to the present and continuing. It is further the finding of the District Hearing Officer that there is insufficient evidence to support the requested period of temporary total disability compensation as being causally related to the allowed conditions in this claim. Accordingly, temporary total disability compensation is denied for the period from 03/13/2004 to 05/16/2006.
 This order is based upon the medical report of Dr. Ayodele Adebayo dated 04/01/2006.
 {¶ 35} 12. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on July 6, 2006. The SHO affirmed the prior DHO order and provided the following additional reasoning:
 It is the order of the Hearing Officer that the C-86 motion, filed by the injured worker on 03/13/2006, is denied. The motion requested the payment of temporary total disability compensation from 03/13/2004 to the present and continuing.
 The Hearing Officer finds that the injured worker was not temporarily and totally disabled as a result of the allowed conditions in the claim from 03/13/2004 to the present. In making this finding, the Hearing Officer relies upon the medical report from Dr. Adebayo dated 04/01/2006. The Hearing Officer further relies upon the lack of contemporaneous medical evidence to indicate that the injured worker was taken off work on 03/13/2004 as a result of the 06/08/1992 industrial injury.
 The Hearing Officer orders that the request for the payment of temporary total disability compensation from 03/13/2004 to the present be denied.
 This order is based upon the medical review from Dr. A. Adebayo dated 04/01/2006.
 {¶ 36} 13. Relator's further appeal was refused by order of the commission mailed July 26, 2006.
 {¶ 37} 14. Thereafter, relator filed the instant mandamus action in this court. *Page 15 
Conclusions of Law: {¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 39} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630. *Page 16 
 {¶ 40} Relator first argues that, although Dr. Adebayo specifically noted that he had reviewed and accepted both the allowed conditions in the claim as well as the findings of the examining physician, that, in reality, Dr. Adebayo had not. Relator argues that a nonexamining physician must specify what medical reports were reviewed and, after expressly accepting the findings of the examining physician, must point out with some specificity the basis of the opinion which he draws from those factual findings. See State ex rel. Kelly v. Indus. Comm. (1984),15 Ohio App.3d 91.
 {¶ 41} With regard to this argument, the magistrate first notes that there is no dispute about what records Dr. Adebayo reviewed. Second, Dr. Adebayo identified those records including notes from Fort Hamilton-Hughes Memorial Hospital, as well as Drs. Simons, Nobbs, Reddy and Beresh. Third, Dr. Adebayo identified several specific records by date. Ultimately, Dr. Adebayo concluded that the medical evidence which he reviewed was not sufficient to support relator's claim that she was temporarily totally disabled during that time period and, further, that many of the notes indicated that she was doing well except for occasional flare-ups.
 {¶ 42} Upon consideration of this specific issue, the magistrate finds that Dr. Adebayo did accept the allowed conditions as well as the findings of the examining physicians, that he did specify the medical reports he reviewed, and that he did point out, with some specificity, the basis for his opinion. Relator challenges Dr. Adebayo's use of the word "well" as he noted that she was doing "well." However, the magistrate notes that Dr. Adebayo specifically stated that the medical records he reviewed were not sufficient to substantiate a period of disability. Upon review, the magistrate notes further that Dr. Nobbs did reference several times that relator's condition was improved. As such, the *Page 17 
magistrate concludes that Dr. Adebayo's report does constitute "some evidence" upon which the commission could rely.
 {¶ 43} Relator also argues that Dr. Adebayo did not have the benefit of Dr. Nobbs' subsequent report and, as such, "the probative value of Dr. Adebayo's report is highly questionable." (Relator's brief, at 6.) Further, relator argues that it is obvious that the SHO did not consider the other evidence filed after Dr. Adebayo's report. For the reasons that follow, the magistrate finds that this argument is not well-taken.
 {¶ 44} Relator's assertion that the probative value of Dr. Adebayo's report is highly questionable goes to the weight and credibility of that report and that is for the commission to determine. As noted previously, this magistrate finds that Dr. Adebayo's report does constitute some evidence upon which the commission could have relied. Second, relator's assertion that the SHO obviously did not consider Dr. Nobbs' May 4, 2006 report, cannot be substantiated by the record. The commission is only required to cite the evidence upon which it relies and it is not required to explain why it finds some evidence to be more probative than other evidence, nor is the commission required to explain why it rejects some evidence and accepts other evidence. In the present case, the commission stated that it relied upon the report of Dr. Adebayo. The commission was not required to explain why it did not accept as persuasive Dr. Nobbs' May 2006 report.
 {¶ 45} Furthermore, the commission specifically found that relator had failed to submit contemporaneous medical evidence to support the requested period of TTD compensation. While it is apparent that relator treated with various physicians beginning in March 2004 and continuing, it is not necessarily obvious from those treatment records that the pain and other problems which relator was experiencing were rendering her *Page 18 
disabled for the prolonged period of time which she claims. The medical records are evidence of treatment, but this magistrate cannot say that the commission has abused its discretion in finding that those treatment records are insufficient to support the period of disability requested. As noted previously, credibility and the weight to be given evidence are for the commission to determine and this magistrate cannot say that the commission has abused its discretion in this particular case.
 {¶ 46} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her request for TTD compensation and relator's request for a writ of mandamus should be denied.
/s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE
 NOTICE TO THE PARTIES Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). *Page 1